UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-00965-SSS-KES | Date | April 25, 2025 |
|---|---|---|---|
| Title | *Yostin Sleiker Gutierrez-Contreras v. Warden, et al.* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING PETITION FOR
TEMPORARY RESTRAINING ORDER AS TO NOTICE
PRIOR TO ANY REMOVAL UNDER THE ALIEN
ENEMIES ACT [DKT. 6]**

On April 21, 2025, Petitioner Yostin Sleiker Gutierrez-Contreras filed a
Petition for a Temporary Restraining Order as to Notice Prior to Any Removal
Under the Alien Enemies Act ("TRO"). [Dkt. 6]. Respondents Warden, Pam
Bondi, Todd M. Lyons, Kristi Noem, Andre Quinones, and Donald J. Trump
("Respondents") filed their Opposition on April 24, 2025. [Dkt. 10]. For the
reasons stated below, Petitioner's TRO is **GRANTED.** [Dkt. 6].

## I.    FACTUAL BACKGROUND

According to the Petition for Writ of Habeas Corpus by Individual in
Federal Custody, Petitioner Yostin Sleiker Gutierrez-Contreras is a national of
Venezuela who is currently being held at Desert View Annex immigration
detention facility in Adelanto, California. [Dkt. 1 at 4].

On March 14, 2025, the President of the United States issued Proclamation
No. 10903, finding and declaring "that all Venezuelan citizens 14 years of age or

older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua, 90 Fed. Reg. 13033 (March 14, 2025). Petitioner alleges that on May 13, 2024, he was enrolled in biometric Immigration and Customs Enforcement ("ICE") reporting and directed to enroll in intensive ICE supervision in San Bernardino, California. [Dkt. 1 at 6]. On September 6, 2024, Petitioner reported to the Enforcement and Removal Operations ("ERO") in San Bernardino, California. [*Id.*]. ERO took photos of Petitioner's tattoos and, on the basis of those tattoos, concluded Petitioner had a possible affiliation with Tren de Aragua ("TdA"), a purported criminal organization or "gang." [*Id.*]. Nonetheless, ERO allowed Mr. Gutierrez-Contreras to remain on supervision and Petitioner vigorously disputes any TdA affiliation. [*Id.*].

Petitioner alleges that although he had maintained perfect compliance on supervision, ERO took him into custody on March 19, 2025. [*Id.*]. Petitioner states that on March 21, 2025, a complaint was filed in the criminal case alleging violations of 18 U.S.C. § 1546(a) and on March 26, 2025, Petitioner had his initial appearance and detention hearing in the criminal case. [*Id.*]. At that time, the presiding magistrate judge ordered him released pretrial on conditions, but ICE officials took petitioner back into immigration custody and Petitioner has remained in immigration custody since then. [*Id.*].

On April 12, 2025, Petitioner's counsel was notified by Petitioner that on March 19, 2025, ICE officials indicated to him that he would be removed to El Salvador. [*Id.* at 7]. At approximately 4:00 A.M. on April 14, 2025, Defendant's counsel was notified by Petitioner's family that Petitioner had told them, by phone, that ICE was planning on moving him from Desert View Annex to an unknown location. [*Id.*]. Petitioner was taken out of the Central District on the morning of April 14, 2025, and was flown to the Bluebonnet Detention Center in Anson, Texas before Petitioner filed the first habeas petition in the related case at 5:25-cv-911-SSS. [*Id.*].

Petitioner is in the midst of ongoing Section 1229(a) immigration proceedings with an immigration judge in Adelanto, California but no order of removal has been issued. [Dkt. 1 at 9]. He is currently in ICE custody and his next Title 8 hearing is scheduled for June 2025.

## II.    LEGAL STANDARD

For the Court to grant an application for a TRO, plaintiff must show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). Additionally, when the Government is a party to a case, "the balance of the equities and public interest factors merge." *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) *(citing Nken v. Holder*, 556 U.S. 418 (2009)).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious questions going to the merits ... and the balance of hardships tips sharply in [his] favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.    DISCUSSION

Petitioner requests the Court grant the TRO because he is in "immediate danger" of being removed under the Alien Enemies Act ("AEA") without notice and an opportunity to challenge the legality of any AEA designation. [TRO at 5]. Petitioner asserts that Respondents transported Petitioner to the Bluebonnet Detention Facility in Anson, Texas which is the same facility from which the government placed several Venezuelans on buses in an apparent effort to remove them to El Salvador under the AEA until they were stopped by a Supreme Court Order. [*Id*.]; *See A.A.R.P. v. Trump*, 604 U.S. __, 2025 WL 1147238 (Apr. 19, 2025). Petitioner insists granting the TRO is necessary to ensure his Due Process rights are protected. [*Id*.].

Respondents argue the TRO should be denied because Petitioner is not at imminent risk of summary removal pursuant to the AEA so he cannot demonstrate a likely threat of irreparable harm. [Opp. at 2]. In addition, Respondents claim

that Petitioner is only entitled to "reasonable notice" prior to removal under the
AEA rather than the fourteen days' notice the TRO seeks, and the Court does not
have jurisdiction to enjoin the government's transfer from Adelanto, California
and/or Desert View Annex. [*Id*.]. Finally, at the hearing on this TRO Respondents
insisted granting the TRO would cause Respondents hardship in conducting
removal proceedings by causing resource constraints.

## A. Jurisdiction

Respondents argue this Court is enjoined from entering injunctive relief with
respect to transfers under 8 U.S.C. § 1252(a)(2)(B)(ii) and 1252(g) of the
Immigration and Nationality Act ("INA"). [Opp. at 5–6]. However, the INA does
not prohibit judicial review "as to questions of interpretation and constitutionality"
of the Act simply because a petitioner may also be involved in Title 8 immigration
proceedings. *D.B.U. v. Trump*, 2025 WL 1163530 (D. Colo. April 22, 2025).
Petitioner challenges removal proceedings under the Proclamation and the EA
through habeas, and specifically carves out any challenge to Title 8 removal
proceedings in his requested relief. As such, Respondents' challenge to the
Court's jurisdiction under the INA is inapplicable and does not divest the Court of
jurisdiction over this matter.

This conclusion is further supported by *A.A.R.P.*, where the district court
concluded petitioners did not face an imminent threat of removal under the Act,
and the Supreme Court nonetheless ordered the government "not to remove any
member of the putative class of detainees from the United States" until further
order. 2025 WL 1147581, at *1 (citing § 1651(a)). Therefore, *A.A.R.P.* requires
the Court to craft the remedy Petitioners seek, even if named Petitioners are not
"currently" facing removal under the Act and Proclamation. *D.B.U.* at 8.
Especially where granting such relief, at this stage, is temporary, and ensuring that
Petitioner remains in this judicial district could be important at later stages of
habeas litigation. *Harris v. Nelson*, 394 U.S. 286, 299–300 (1969); *Boumediene v.
Bush*, 553 U.S. 723, 779, (2008).

A habeas petition brought under 28 U.S.C. § 2241 challenging detention
must be brought against the immediate custodian and filed in the district in which
the petitioner is detained. The Supreme Court has made clear that in "core" habeas
petitions—that is, petitions like the instant one that challenges the petitioner's
present physical confinement—the petitioner must file the petition in the district in
which he is confined (that is, the district of confinement) and name his warden as

the respondent.  *See J.G.G. v. Trump,* 604 U.S. ----, *1 (April 7, 2025) *(citing Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004)).  In this case, Petitioner is confined at the Desert View Annex immigrant detention facility in Adelanto, California within the Central District of California, so his district of confinement is the Central District of California.  Thus, the Court has proper jurisdiction over this petition.

## B.  **Merits of the TRO**

### 1.  Serious Question Raised

Here, Petitioner's TRO raises the serious question of whether his removal under the AEA without notice and an opportunity to challenge the removal is a violation of his rights under the Due Process Clause.  [TRO at 5]. The Due Process Clause states that no person shall "be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  It is well-established that the Fifth Amendment guarantees non-citizens Due Process in removal proceedings. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects.  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Furthermore, the Supreme Court has established that individuals detained under the AEA "must receive notice ... that they are subject to removal under the Act[,]" and the "notice must be afforded within a reasonable time and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Trump v. J. G. G.*, 604 U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2025 WL 1024097, at *2 (Apr. 7, 2025).  Respondents in this case, and in other cases across the country, have engaged in attempted removals of Venezuelan nationals under the AEA without notice or an opportunity to challenge

the removal.[1]  While Respondents challenge the requirement of fourteen days'
notice as unnecessary given that Petitioner, and others similarly situated, are solely
entitled to "reasonable notice" under *J.G.G.*, Respondents fail to articulate
specifically what they believe is sufficient to comply with the requirement for
"reasonable notice" in their briefing and at the hearing on this Petition.  [Opp. at
2].  This Court cannot, and will not, rely on vague and undefined statements about
notice procedures when an individual's due process rights are implicated.
Therefore, the Court holds that Petitioner's TRO raises a serious question related to
the possible violation of his due process rights if he is removed under the AEA
without fourteen days' notice and an opportunity to challenge the removal.

>        2.   Likelihood of Irreparable Harm

In the present matter, the Court finds that the possible removal of Petitioner
by the United States pursuant to the AEA would cause immediate and irreparable
injury to the removed individual, as he would be unable to seek habeas relief.  *See
Smith v. U.S. Customs and Border Protection*, 741 F.3d 1016 (9th Cir. 2014)
(finding that a petitioner cannot avail themselves of habeas corpus jurisdiction
once they have been removed because they are "no longer in custody").  Moreover,
if the United States erroneously removed an individual to another country based on
the Proclamation, a substantial likelihood exists that the individual could not be
returned to the United States.  *See Abrego Garcia v. Noem*, 2025 WL 1021113, at
*4 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring) (noting the United States'
argument that a district court lacks the jurisdiction to compel the Executive Branch
to return an erroneously-removed alien to the United States).

Respondents argue that Petitioner does not face a substantial likelihood of
irreparable harm because he is covered by the administrative stay issued in the
*A.A.R.P.* case and Respondents do not *presently* expect to remove Petitioner under
the AEA.  [Opp. at 2].  While Petitioner does not dispute either fact, he raises
concerns about Respondents' current efforts to dissolve or limit the administrative

---

[1] See Dan Mangan, *Supreme Court Rules U.S. Must Facilitate Return of Kilmar Abrego
Garcia from El Salvador* (CNBC April 10, 2025), https://www.cnbc.com/2025/04/10/supreme-
court-trump-kilmar-abrego-garcia.html?msockid=02f44683457d69840030523444f96801;
Vaughn Hillyard, et al*., As Legal Fight Raged, ICE Buses Filled with Venezuelans Heading
Toward Airport Turned Around, Video Shows* (NBC News Apr. 20, 2025),
https://www.nbcnews.com/politics/immigration/legal-fight-raged-ice-buses-filledvenezuelans-
heading-airport-turned-rcna202007.

stay issued by the Supreme Court in the *A.A.R.P.* case and how that could lead to his removal under the AEA without an opportunity to exercise his due process rights. Given these concerns, and Respondents' prior actions removing similarly situated individuals pursuant to the AEA, the Court is persuaded that Petitioner continues to face a likely threat of irreparable harm.

### 3. Balance of Hardships and Public Interest

The Court finds the balance of the hardships "tips sharply" in Petitioner's favor as he would suffer great hardship if the TRO is denied and he is removed pursuant to the AEA unable to assert his due process rights by seeking habeas relief. While Respondents argue that granting the TRO could cause them to suffer hardship in that it could impact their ability to conduct removal proceedings and constrain resources in the form of detention space, Respondents failed to provide, both at the hearing and in their Opposition, detailed information related to how granting the TRO would impact these concerns as they relate to the Desert View Annex facility and Petitioner. [*See generally* Opp.].

The Court also finds that the public interest weighs in favor of Petitioner because a removal under the AEA without notice could be a violation of Petitioner's due process rights. *See Xuyue Zhang v. Barr*, 612 F.Supp.3d 1005, 1017 (C.D. Cal.) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As such, the Court finds that both factors weigh heavily in favor of Petitioner.

## IV.    CONCLUSION

Ultimately, the Court finds that the TRO raises serious questions concerning the merits of the case, the balance of the hardships tips sharply in Petitioner's favor, he is likely to suffer irreparable harm in the form of a removal under the AEA without fourteen days' notice or an opportunity to challenge, and granting his requested relief is in the public interest. Accordingly, the Court finds that maintaining the status quo is required to prevent the immediate and irreparable injury that may occur. As such, the TRO is **GRANTED**.  [Dkt. 6].

In accordance with the above, pursuant to Federal Rule of Civil Procedure 65, it is **ORDERED THAT**:

Respondents are ordered to provide fourteen days' notice to Petitioner and his counsel, in writing, prior to attempting to remove, deport, or expel him out of the United States under the Alien Enemies Act or any legal authority other than the Immigration and Nationality Act. Respondents are enjoined and barred from removing Petitioner under the Alien Enemies Act or any legal authority other than the Immigration and Nationality Act without first providing such notice;

Respondents are enjoined from transferring, relocating, or removing Petitioner from the Desert View Annex immigration detention; and

Respondents are enjoined from transporting Petitioner outside of Adelanto, California without an Order from the Court.

This Order shall be in effect until May 10, 2025.  The Court **ORDERS** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue.  Respondents shall file any response by **Friday May 2, 2025**, and Plaintiff shall file any reply by noon on **Wednesday May 7, 2025**.  The Court **SETS** a hearing in person on whether a preliminary injunction should issue on **May 9, 2025, at 1 P.M.** in Courtroom 2, on the 2nd Floor of the George E. Brown, Jr. Federal Building and United States Courthouse at 3470 Twelfth Street, Riverside, California 92501.

**IT IS SO ORDERED.**