UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-00965-SSS-KES | Date | May 14, 2025 |
| Title | *Yostin Sleiker Gutierrez-Contreras v. Warden, et al.* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|
| Irene Vazquez | Not Reported |
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER (1) ISSUING PRELIMINARY INJUNCTION REQURING FOURTEEN-DAY NOTICE PRIOR TO ANY REMOVAL UNDER THE ALIEN ENEMIES ACT [Dkt. 21] AND (2) DENYING APPLICATION [Dkt. 16]**

On April 25, 2025, the parties were directed to brief the issue of whether the Court should enter a preliminary injunction enjoining any removal of Petitioner under the Alien Enemies Act ("AEA"). [Dkt. 11]. Respondents Warden, Pam Bondi, Todd M. Lyons, Kristi Noem, Andre Quinones, and Donald J. Trump ("Respondents") filed their Brief in Opposition to the Issuance of a Preliminary Injunction ("Opp.") on May 2, 2025 [Dkt. 10] and Petitioner filed his Petition for a Preliminary Injunction Requiring 14-Day Notice Prior to any Removal Under the Alien Enemies Act ("Petition") on May 7, 2025. [Dkt. 21]. For the reasons stated below, the Court hereby **GRANTS** the Petition.

I.   **FACTUAL BACKGROUND**

According to the Petition for Writ of Habeas Corpus by Individual in Federal Custody, Petitioner Yostin Sleiker Gutierrez-Contreras is a national of

Venezuela who is currently being held at Desert View Annex immigration detention facility in Adelanto, California. [Dkt. 1 at 4].

On March 14, 2025, the President of the United States issued Proclamation No. 10903, finding and declaring "that all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua, 90 Fed. Reg. 13033 (March 14, 2025). Petitioner alleges that on May 13, 2024, he was enrolled in biometric Immigration and Customs Enforcement ("ICE") reporting and directed to enroll in intensive ICE supervision in San Bernardino, California. [Dkt. 1 at 6]. On September 6, 2024, Petitioner reported to the Enforcement and Removal Operations ("ERO") in San Bernardino, California. [*Id*.]. ERO took photos of Petitioner's tattoos and, on the basis of those tattoos, concluded Petitioner was affiliated with Tren de Aragua ("TdA"), a purported criminal organization or "gang." [*Id*.]. Nonetheless, ERO allowed Mr. Gutierrez-Contreras to remain on supervision and Petitioner vigorously disputes any TdA affiliation. [*Id*.].

Petitioner alleges that although he had maintained perfect compliance on supervision, ERO took him into custody on March 19, 2025. [*Id*.]. Petitioner states that on March 21, 2025, a complaint was filed in the criminal case against him alleging violations of 18 U.S.C. § 1546(a) and on March 26, 2025, Petitioner had his initial appearance and detention hearing in the criminal case. [*Id*.]. At that time, the presiding magistrate judge ordered him released pretrial on conditions, but ICE officials took petitioner back into immigration custody and Petitioner has remained in immigration custody since then. [*Id*.].

On April 12, 2025, Petitioner's counsel was notified by Petitioner that on March 19, 2025, ICE officials indicated to him that he would be removed to El Salvador. [*Id*. at 7]. At approximately 4:00 A.M. on April 14, 2025, Defendant's counsel was notified by Petitioner's family that Petitioner had told them, by phone, that ICE was planning on moving him from Desert View Annex to an unknown location. [*Id*.]. Petitioner was taken out of the Central District on the morning of April 14, 2025, and was flown to the Bluebonnet Detention Center in Anson, Texas before Petitioner filed the first habeas petition in the related case at 5:25-cv-911-SSS. [*Id*.].

On April 25, 2025, the Court granted Petitioner's Petition for Temporary Restraining Order as to Notice Prior to Any Removal Under the Alien Enemies Act ("TRO"). [Dkt. 11]. The TRO ordered the parties to show cause why an order converting the TRO into a preliminary injunction should not issue. [*Id.*].

Petitioner is in the midst of ongoing Section 1229(a) immigration proceedings with an immigration judge in Adelanto, California but no order of removal has been issued. [Dkt. 1 at 9]. He is currently in ICE custody and his next Title 8 hearing is scheduled for June 2025.

## II.   LEGAL STANDARD

Similar to a temporary restraining order, to obtain a preliminary injunction, a party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to him in the absence of preliminary, equitable relief; (3) that the balance of equities tips in his favor as the movant; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Additionally, when the Government is a party to a case, "the balance of the equities and public interest factors merge." *See Drakes Bay Oyster Co. v. Jewell,* 747 F.3d 1073, 1092 (9th Cir. 2014) *(citing Nken v. Holder*, 556 U.S. 418 (2009)).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Under the sliding scale approach, a petitioner is entitled to a preliminary injunction if he has raised "serious questions going to the merits ... and the balance of hardships tips sharply in [his] favor." *Id.* (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

///

///

///

## III. DISCUSSION

### A. <u>Respondents' Application to File Document Under Seal</u>

The Ninth Circuit recognizes a strong common law presumption in favor of public access to court records. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). But "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Sealing information is permitted when there is a compelling governmental interest and the seal is narrowly tailored to protect that interest. *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606–07 (1982).

Respondents urge the Court to seal a portion of the Declaration of Jackson Lara in support of their Brief in Opposition to a Preliminary Injunction. [Dkt. 16 at 2; ("App.")]. Specifically, Respondents request sealing the time periods of 12 hours given for AEA detainees after notice and before removal, and 24 hours during which U.S. Immigration and Customs Enforcement ("ICE") will not remove an individual if they express an intent to file a habeas petition included in paragraph 11 of the Declaration. [*Id.* at 3; *see also* Dkt. 17 at 3]. Respondents insist a disclosure "could endanger law-enforcement personnel and thwart lawful removals of alien enemies who do not contest their designation." [App. at 3]. Further, Respondents insist that alien enemies would know when their scheduled removals would occur and "would be better able to coordinate resistance to those removals, which could include physical attacks on law-enforcement and operations personnel." [*Id.*]. Respondents claim these concerns justify the narrowly tailored seal they seek to maintain. [*Id.* at 4].

Respondents fail to provide any information to substantiate their concerns about compromising operational safety to justify sealing this portion of the Declaration. Instead, Respondents seemingly expect the Court to rely on their contention without providing specific examples and essentially blindly trust their word, just as they did when they insisted the government had developed adequate procedures for providing individuals under the AEA with reasonable notice of their removal in their opposition to the TRO. [Dkt. 10 at 2]. Respondents made this assertion without citing to any materials and instead notified the court that a declaration was "forthcoming." [*Id.*]. As stated in the order granting the TRO, this

Court will not rely on patently vague or speculative statements to rule in favor of a party, particularly when Petitioner's due process rights are concerned.

Without specific supporting examples, the Court cannot understand how public disclosure of the meager 12-hour notice procedure could endanger law enforcement personnel and thwart lawful removals. Moreover, the Court notes that this exact information has already been unsealed in at least two other cases and is known to the public.[1] Therefore, Respondents fail to rebut the presumption in favor of public access to court records and the Application to Seal is **DENIED**. [App.].

### B. Jurisdiction

Respondents argue, once again, this Court is enjoined from entering injunctive relief with respect to transfers under 8 U.S.C. § 1252(a)(2)(B)(ii) and 1252(g) of the Immigration and Nationality Act ("INA"). [Brief at 18–20]. Respondents claim the TRO is "overbroad" because it restrains the government from acting according to Title 8. [*Id*.]. The Court reminds Respondents of its specific exclusion of any prohibitions on their ability to remove Petitioner under a valid removal order pursuant to the INA. [TRO at 8]. The TRO, and the present order, enjoin Respondents from removing Petitioner under the AEA. Furthermore, the parties briefed the Court that Petitioner has an upcoming Title 8 hearing within the Central District of California in June 2025.

To be sure, a habeas petition brought under 28 U.S.C. § 2241 challenging detention must be brought against the immediate custodian and filed in the district in which the petitioner is detained. The Supreme Court has made clear that in "core" habeas petitions—that is, petitions like the instant one that challenges the petitioner's present physical confinement—the petitioner must file the petition in the district in which he is confined (the district of confinement) and name his warden as the respondent. *See J.G.G. v. Trump,* 604 U.S. ----, *1 (April 7, 2025) *(citing Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004)). In this case, Petitioner is confined at the Desert View Annex immigrant detention facility in Adelanto,

---

[1] *See, e.g.*, Valerie Gomez, *Venezuelans Subject to Removal Under Wartime Act Have 12 Hours to Decide on Contesting, Docs Show* (Associated Press, Apr. 24, 2025), https://apnews.com/article/immigration-aea-trumpdeportations-be16313f9bfd75dce23a5fb9e9af03dd

California within the Central District of California, so his district of confinement is the Central District of California. Therefore, the Court retains jurisdiction over this petition and finds it crucial to ensure Petitioner remains in this district for habeas purposes. *See Harris v. Nelson*, 394 U.S. 286, 299–300 (1969); *Boumediene v. Bush*, 553 U.S. 723, 779, (2008) (finding that ensuring that Petitioner remains in his judicial district of confinement could be important at later stages of habeas litigation).

Respondents also suggest the Court lacks jurisdiction to review the Proclamation or enjoin the President's exercise of authority under Article II and the AEA. [Brief at 16]. Respondents contend the Proclamation implicates a political question that is not judicially reviewable because (1) the determination that an "invasion" or "predatory incursion" is being perpetrated deals with foreign affairs and immigration policy, which are inherently issues committed to the political branches, and (2) there are no manageable standards permitting courts to assess exactly when hostile entry and criminal and violent acts constitute an "invasion" or "predatory incursion" for AEA purposes. [*Id.* at 17–18].

However, a federal court in the Southern District of Texas has clarified that construing the language of the AEA does not require courts to adjudicate the wisdom of the President's foreign policy and national security decisions and determining what conduct constitutes an "invasion" or "predatory incursion" for purposes of the AEA is distinct from ascertaining whether such events have in fact occurred or are being threatened. *J.A.V., et al. v. Donald J. Trump, et al.*, 1:25–CV–072 (S.D. Tex., May 1, 2025). Furthermore, the court held that courts regularly apply canons of construction to determine the meaning of statutory language, so Respondents' contention that judicial review would rely on "no manageable standards" was incorrect. *Id.*

The Court is persuaded by the analysis and conclusions of the Texas court. Here, Respondents make identical arguments that are similarly flawed as they were in the *J.A.V.* case. *See Comm. for Nuclear Resp., Inc. v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir. 1971) ("An essential ingredient of our rule of law is the authority of the courts to determine whether an executive official or agency has complied with the Constitution and with the mandates of Congress which define and limit the authority of the executive."). The Court is not persuaded that an "invasion" or "predatory incursion" is being perpetrated here and reaffirms that the Court is equipped to apply canons of construction to guide its judicial review of the

Proclamation. Therefore, the Court finds that it has jurisdiction to review the Proclamation.

## C. **Preliminary Injunction**

Petitioner requests the Court convert the TRO into a preliminary injunction because he is likely to succeed on the merits of his claim, he will suffer irreparable harm if the injunction is not issued, the balance of the equities weigh in his favor, and the Court has the authority to order Respondents to keep Petitioner in the Central District of California, and should exercise its authority to do so. [Petition at 3]. Respondents argue the Court should not issue a preliminary injunction because it lacks jurisdiction over Petitioner's claims, Petitioner cannot succeed on the merits of his claims, and the remaining equitable factors weigh strongly in the government's favor. [Opp. at 2].

### 1. Likelihood of Success on the Merits

As before, the Court finds the Petition raises a serious question about whether his removal under the AEA without fourteen days' notice and an opportunity to challenge the removal is a violation of his rights under the Due Process Clause. [*see generally* Petition]. The Due Process Clause states that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well-established that the Fifth Amendment guarantees non-citizens Due Process in removal proceedings. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Furthermore, the Supreme Court has established that individuals detained under the AEA "must receive notice ... that they are subject to removal under the Act[,]" and the "notice must be afforded within a *reasonable time* and in such a manner as will allow them to actually seek habeas relief in the proper venue before such removal occurs." *Trump v. J. G. G.*, 604 U.S. ——, —— S.Ct. ——, —— L.Ed.2d ——, 2025 WL 1024097, at *2 (Apr. 7, 2025) (emphasis added).

Previously, Respondents failed to provide the Court with what they considered to be notice "within a reasonable time" under the Supreme Court's requirement. Now, Respondents submit form AEA-21B and describe the notice procedures they

utilize for individuals set for removal under the AEA. [Dkt. 18, 17]. These notice procedures are inadequate.

First, Respondents' notice form is only written in English, says nothing about a person's right to seek review of their AEA determination, and says nothing about their limited window of *12 hours* to express intent to file a habeas petition before they are placed on a plane for removal. [Dkt. 18]. Further, this form does nothing to provide notice as to the reasons for their AEA designation for removal and the Court has no guarantee that Respondents will read it to detainees in a language they understand other than Respondents' word that they will. [Dkt. 17]. *Cf. Dubin v. United States*, 599 U.S. 110, 131 (2023) (refusing to construe a statute "on the assumption that the Government will use it responsibly."). Again, the Court will not rely solely on Respondents' word when an individual's due process rights are concerned.

Lastly, as Petitioner points out, many federal courts have also held these exact notice procedures are insufficient for the notice "within a reasonable time" requirement under *J.G.G. E.g., G.F.F. v. Trump*, 1:25-cv-2886, ECF No. 84, p. 11 (S.D.N.Y.) ("Respondents' proposal for notice is insufficient under the AEA, the Supreme Court's ruling in J.G.G., and Constitutional due process."); *D.B.U. v. Trump*, No. 1:25cv-1163-CNS, ECF No. 52, p. 20 (D. Colo. 2025) ("Respondents fail to persuade their proposed notice procedures under the Act are proper."). Therefore, the Court holds the Petitioner has, at a minimum, raised a "serious question" related to the possible violation of his due process rights if he is removed under the AEA without fourteen days' notice and an opportunity to challenge the removal.

### 2. Likelihood of Irreparable Harm

The Court finds that the removal of Petitioner by the United States pursuant to the AEA without fourteen days' notice would cause immediate and irreparable injury to the Petitioner, as he would be unable to seek habeas relief. *See Smith v. U.S. Customs and Border Protection*, 741 F.3d 1016 (9th Cir. 2014) (finding that a petitioner cannot avail themselves of habeas corpus jurisdiction once they have been removed because they are "no longer in custody"). Moreover, if the United States erroneously removed an individual to another country based on the Proclamation, a substantial likelihood exists that the individual could not be returned to the United States. *See Abrego Garcia v. Noem*, 2025 WL 1021113, at *4 (4th Cir. Apr. 7, 2025) (Thacker, J., concurring) (noting the United States'

argument that a district court lacks the jurisdiction to compel the Executive Branch to return an erroneously-removed alien to the United States).

Respondents previously argued that Petitioner does not face a substantial likelihood of irreparable harm because he is covered by the administrative stay issued in the *A.A.R.P.* case and Respondents do not *presently* expect to remove Petitioner under the AEA. While Petitioner does not dispute either fact, he raises concerns about Respondents' current efforts to dissolve or limit the administrative stay issued by the Supreme Court in the *A.A.R.P.* case and how that could lead to his removal under the AEA without a reasonable opportunity to exercise his due process rights.

In addition, Respondents maintain that Petitioner's claim for injury is "purely speculative" because he has not been designated as an "alien enemy" under the Proclamation and because the Department of Homeland Security ("DHS") has developed adequate notice procedures to ensure he can challenge any potential removal under the AEA. [Brief at 15]. Yet, the record of this case contradicts the first assertion because Petitioner was previously set for removal under the AEA, without reasonable notice, until the Supreme Court in *A.A.R.P.* and this Court took action. [Petition at 13]. Furthermore, the Court retains serious concerns about the adequacy of DHS' current notice procedures in their ability to inform Petitioner of his due process rights and how to exercise them.

Given these concerns, the Court is persuaded that Petitioner continues to face a likely threat of irreparable harm without the issuance of this preliminary injunction.

### 3. Balance of Hardships and Public Interest

The Court finds the balance of the hardships "tips sharply" in Petitioner's favor as he would suffer great hardship if the Petition is denied and he is removed pursuant to the AEA without fourteen days' notice as he would be unable to assert his due process rights. Respondents claim granting the Petition would irreparably harm the conduct of foreign policy but fail to explain how other than quoting various cases warning about the "dangers of judicial interference in the conduct of foreign policy." [Brief at 26]. The Court has established its proper role in deciding the legal questions contained in the Petition above and Respondents fail to specify, once again, specifically how enjoining removal under the AEA without providing Petitioner fourteen days' notice causes them any hardship.

The Court also finds that the public interest weighs in favor of Petitioner because a removal under the AEA without fourteen days' notice could be a violation of Petitioner's due process rights. *See Xuyue Zhang v. Barr*, 612 F.Supp.3d 1005, 1017 (C.D. Cal.) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As such, the Court finds that both factors weigh heavily in favor of Petitioner.

## IV. CONCLUSION

Ultimately, the Court finds that the Petition has established serious questions, at the very least, concerning the merits of the case, the balance of the hardships tips sharply in Petitioner's favor, he is likely to suffer irreparable harm in the form of a removal under the AEA without fourteen days' notice or an opportunity to challenge, and granting his requested relief is in the public interest. Accordingly, the Court finds that maintaining the status quo is still required to prevent the immediate and irreparable injury that may occur. As such, the Petition is **GRANTED**. [Dkt. 21].

In accordance with the above, pursuant to Federal Rule of Civil Procedure 65, it is **ORDERED THAT**:

Respondents are hereby **ORDERED** to provide fourteen days' notice to Petitioner and his counsel, in writing, prior to attempting to remove, deport, or expel the petitioner out of the United States under the Alien Enemies Act.

Respondents are hereby **ENJOINED** and **BARRED** from removing petitioner under the Alien Enemies Act without first providing such notice. Nothing in this order shall prevent Respondents from releasing Petitioner and nothing in this order shall prevent Respondents from removing Petitioner pursuant to a removal order lawfully issued under the Immigration and Nationality Act.

Respondents are **ENJOINED** from removing Petitioner from the Central District of California for any purpose other than executing a removal order lawfully issued under the Immigration and Nationality Act.

///

///

The parties are further directed to file a status report with the Court following Petitioner's next Title 8 proceeding informing the Court of the immigration court's decision.

**IT IS SO ORDERED.**